UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NATHAN B. MAUDLIN, ) | |
| JEANNE G. MAUDLIN, and ) | |
| FLANDERS-SCOTT, LLC, ) | |
| ) | |
| Plaintiffs, ) | 3:14-cv-00144-RLY-WGH |
| ) | |
| vs. ) | |
| ) | |
| FEDERAL EMERGENCY ) | |
| MANAGEMENT AGENCY, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, Nathan B. and Jeanne G. Maudlin and Flanders-Scott, LLC, brought suit against the Federal Emergency Management Agency ("FEMA"), seeking declaratory and injunctive relief against FEMA's implementation of its new flood insurance rate map ("FIRM") affecting New Harmony, Indiana. Plaintiffs argue that FEMA failed to follow certain statutory requirements set forth in the National Historic Preservation Act of 1966 ("NHPA"), amended and codified as 54 U.S.C. § 300101 *et. seq.*, rendering the FIRM unlawful. FEMA moves to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). For reasons set forth below, FEMA's Motion to Dismiss is **GRANTED**.

I.  Background

New Harmony sits on the Lower Wabash River in Southwestern Indiana. In 1965, the Department of the Interior designated New Harmony as a National Historic Landmark District. In 1966, it was placed on the National Register of Historic Places. (Filing No. 8 ("Am. Compl.") ¶ 9). New Harmony received its designation "under themes of social and humanitarian movement, with areas of significance including architecture, social history, and science." (*Id.*).

In 2011, FEMA began the process of updating its flood elevation determinations for New Harmony. A flood elevation determination is FEMA's determination of water level elevations for the base flood, that is, "the flood level that has a one percent or greater chance of occurrence in any given year." 44 C.F.R. § 59.1. FEMA then depicts these determinations and any special flood hazard areas ("SFHA")[1] in a FIRM. FEMA published its proposed determinations in the Federal Register on May 16, 2013, and in the *Posey County News* on June 12 and 19, 2013. (Filing No. 11-1 at 1). FEMA received no administrative appeals challenging its proposed determinations and, thus, the FIRM was set to take effect on November 5, 2014. (*Id.*).

Plaintiffs allege, and the court accepts as true, that FEMA's new floodplain determinations designate more than sixty percent of real estate in New Harmony as "Zone A"[2] property. This determination implicates the mandatory flood insurance

---

[1] An SFHA is "the land within the floodplain within a community subject to a [one] percent or greater chance of flooding in a given year." 44 C.F.R. § 59.1.

[2] "Zone A" is synonymous with an SFHA. *See* 44 C.F.R. § 59.1.

2

requirements for property owners and lessees under the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 et seq. (Am. Compl. ¶ 12). This designation, according to Plaintiffs, will cause property values to decline anywhere from forty to sixty percent and will depress local tax revenue and investment and, ultimately, the local economy. (*Id.*).

Plaintiffs challenge FEMA's new FIRM for New Harmony on two principal grounds. First, Plaintiffs claim FEMA failed to "use the most reliable, accurate data reasonably available" in revising the FIRM for New Harmony. Second, Plaintiffs argue the revised FIRM is "contrary to law" because FEMA failed to observe mandatory procedures set forth in the NHPA and enforced by the Advisory Council on Historic Preservation ("ACHP"). Plaintiffs, therefore, ask the court to (1) find that FEMA did not "use the most reliable, accurate data" when revising the FIRM for New Harmony; (2) find that FEMA did not engage in the NHPA's Section 106 review process, thus rendering the revised FIRM contrary to law; and (3) enjoin FEMA from implementing the FIRM.

## II. Discussion

### A. Standards

A motion to dismiss under Rule 12(b)(1) tests the sufficiency of the complaint, not the merits of the case. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). Rule 12(b)(1) requires dismissal of claims over which the court lacks subject matter jurisdiction. The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor, "but a plaintiff faced

with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Id.* at 588–89 (citations omitted).

To survive a Rule 12(b)(6) challenge, the complaint must contain sufficient factual allegations to state a claim upon which relief may be granted. The court accepts all facts in the complaint as true and views them in the light most favorable to the plaintiff. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

### B. Sovereign Immunity

Plaintiffs alleged federal question jurisdiction under 28 U.S.C. § 1331 and waiver of sovereign immunity under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, as a basis for the court's jurisdiction. FEMA challenges jurisdiction on grounds that Plaintiffs failed to exhaust administrative remedies provided for in the NFIA. Accordingly, FEMA argues, sovereign immunity is not waived under the APA and the court therefore lacks subject matter jurisdiction.[3]

When bringing suit against the United States or its agencies, the plaintiff must show that the United States has waived sovereign immunity with respect to its claims. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

---

[3] FEMA's challenge to jurisdiction under 28 U.S.C. § 1331 is misplaced. Plaintiffs allege federal question jurisdiction not as a waiver of sovereign immunity but as a source of the court's adjudicatory competence to hear cases arising under federal law. Plaintiffs cite § 1331 in conjunction with the APA. The combination of the two can provide for some judicial review not otherwise barred. *See Califano v. Sanders*, 430 U.S. 99, 105–07, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).

"A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996). "The plaintiff not only must identify a statute that confers subject matter jurisdiction on the district court but also a federal law that waives the sovereign immunity of the United States to the cause of action." *Macklin v. U.S.*, 300 F.3d 814, 819 (7th Cir. 2002). Failure to satisfy either requirement requires dismissal of the complaint. *Id.*

Section 702 of the APA both creates a right to seek review of a final agency action and provides a waiver of sovereign immunity. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 774 (7th Cir. 2011). The waiver only applies to actions that seek relief other than money damages, such as the case here. *Id.*; 5 U.S.C. § 702. "Moreover, the waiver in § 702 is not limited to claims brought pursuant to the review provisions contained in the APA itself. The waiver applies when any federal statute authorizes review of agency action . . . ." *Id.* (citations omitted); *see also* 5 U.S.C. § 704.

Section 704 limits waiver, however, providing for judicial review of agency action "for which there is no other adequate remedy in a court." This exhaustion requirement is a prerequisite to judicial review. *Shawnee Trail Conservancy v. U.S. Dept. of Agric.*, 222 F.3d 383, 389 (7th Cir. 2000). Although courts may in some cases excuse a party's failure to exhaust administrative remedies, *see Iddir v. Immigration & Naturalization Serv.*, 301 F.3d 492, 498 (7th Cir. 2002), courts must strictly apply the doctrine when an agency's regulations or enabling statute require exhaustion as a prerequisite to judicial

review. *See Shawnee Trail Conservancy*, 222 F.3d at 389; *see also Woodford v. Ngo*, 548 U.S. 81, 84–85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

Plaintiffs concede that they did not exhaust the NFIA's process for challenging proposed FIRMs. Rather, they argue that (1) exhaustion would have been futile, and (2) they have a cause of action under the NHPA.[4] To resolve FEMA's jurisdictional challenge, the court must turn to the NFIA and NHPA.

C.     **Exhaustion under the NFIA**

To help curb the personal and economic devastation that flooding causes throughout the United States, Congress enacted the NFIA, which authorizes the National Flood Insurance Program ("NFIP"). Finding the private insurance industry unfit to make flood insurance widely available, *see* 42 U.S.C. § 4001(b), Congress commissioned FEMA to establish and administer the NFIP to make flood insurance available on a nationwide basis. § 4011(a).

The NFIP consists of three principal components: 1) floodplain identification and mapping; 2) floodplain management, and 3) flood insurance. *See Nat'l Wildlife Fed'n v. FEMA*, 345 F. Supp. 2d 1151, 1155 (W.D. Wash. 2004). It encourages property owners

---

[4] The parties do not dispute whether the NHPA creates a private cause of action outside the APA. The court notes that circuits are split on this issue. *Compare Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 167 (5th Cir. 1989) (finding that the NHPA's attorney's fees provision, 54 U.S.C. § 307105, permits private suits outside the APA), *and Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3rd Cir. 1991) (same), *with San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005) (finding that absent explicit language in the NHPA creating a private cause of action, litigants seeking to enforce the NHPA must do so under the APA), *and Friends of St. Frances Xavier Cabrini Church v. FEMA*, 658 F.3d 460, 466 n.2 (5th Cir. 2011) (calling into question the Fifth Circuit's prior cases recognizing a private cause of action under the NHPA). Absent comment from the parties, the court declines to consider the issue, as it has no bearing on the court's finding that it has jurisdiction over Plaintiffs' claim.

in participating communities to purchase federally subsidized insurance as protection against flood losses. In exchange, participating communities must enact certain floodplain management ordinances aimed at reducing the risk of future flood damages. *See* 42 U.S.C. § 4022; *see also* 44 C.F.R. § 59.2(b).

The NFIA requires FEMA to "identify flood-prone areas, publish flood-risk zone data, and revise that data as needed." *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 987 (8th Cir. 2010) (citation omitted); 42 U.S.C. § 4101(a). To carry out its mandate, FEMA conducts studies and publishes FIRMs depicting the SFHAs and the risk premium zones applicable to the communities within the flood-risk zones. 44 C.F.R. § 59.1; *see* 42 U.S.C. § 4104(a)–(b). The FIRM forms the technical basis for actuarial flood insurance rates as well as any necessary floodplain ordinances required of the community. *City of Trenton v. FEMA*, 545 F. Supp. 13, 15 (E.D. Mich. 1981). SFHA designations have significant implications for property owners because the NFIP prohibits federally regulated lenders from making loans secured by improved real estate located in designated SFHAs, unless insurance is purchased under the NFIP. *Great Rivers Habitat All.*, 615 F.3d at 987 (internal alterations omitted); *see also* 42 U.S.C. § 4012a(b)(1).

FEMA must periodically assess the need to revise and update all floodplain areas and flood-risk zones as represented in the FIRM. 42 U.S.C. §4101(e)–(f). When proposing new flood elevation determinations and SFHA designations, FEMA must give notice of such proposals directly to local governments of affected communities and publish them for comment in the Federal Register and a prominent local newspaper. 42 U.S.C. § 4104(a).

FEMA's public notice triggers a ninety-day period during which affected property owners or lessees may appeal FEMA's proposed determinations and designations. § 4104(b). "The sole grounds for appeal shall be the possession of knowledge or information indicating that (1) the elevations being proposed by [FEMA] . . . are scientifically or technically incorrect, or (2) the designation of an identified [SFHA] is scientifically or technically incorrect." *Id.* If presented with information purporting to contradict FEMA's flood elevation determination, FEMA must take measures to resolve such conflicts before issuing a final determination. § 4104(e).

Once FEMA makes a final determination, it must give written notice to the community and any appellants who challenged the proposed determinations. 44 C.F.R. § 67.11. Within sixty days of receiving notice, aggrieved appellants may file suit in district court to challenge FEMA's final determination. 42 U.S.C. § 4104(g); *see also* 44 C.F.R. § 67.12(a). Section 4104(g) sets forth the NFIA's only waiver of sovereign immunity that relates to flood elevation determinations. The district court's scope of review under the NFIA mirrors the scope of review set forth in Section 706 of the APA. 42 U.S.C. § 4104(g); 44 C.F.R. § 67.12(c).

FEMA argues that Plaintiffs' failure to appeal its FIRM within the ninety-day window precludes them from seeking judicial review under the APA. FEMA relies on the exhaustion provision of Section 704 of the APA. To the extent Plaintiffs assert a claim under the NFIA, arguing that FEMA did not employ appropriate modeling or other methods of obtaining data, (*see, e.g.*, Am. Compl. ¶¶ 7, 27), the court agrees with

8

FEMA.[5] Section 4104 prescribes the NFIA's process of review to address precisely this type of complaint—a challenge to the scientific or technical accuracy of FEMA's flood elevation determinations. Any such challenge that fails to strictly hew to the procedures required by statute or regulation also fails to exhaust the available remedies. *See Great Rivers Habitat All.*, 615 F.3d at 990–91. The court therefore lacks jurisdiction to hear Plaintiffs' challenge under the NFIA. But the inquiry does not end here.

FEMA maintains that because the NFIA provides the only avenue to challenge FEMA's determinations as depicted in the FIRM, Plaintiffs' failure to exhaust that avenue precludes jurisdiction under the APA. FEMA cites cases standing for the well-settled proposition that the APA's authorization of judicial review does not provide a duplicative remedy to the specific procedures Congress has provided. *See, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 903, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988). Plaintiffs, rather, challenge the legality of FEMA's process for deriving the FIRM. Specifically, Plaintiffs argue FEMA had a duty under the NHPA to consult the ACHP regarding any potential impacts the FIRM might have on a National Historic Landmark. Because the "sole basis" language of Section 4104(b) precludes this type of challenge, the court cannot find that it constitutes an "adequate remedy" under Section 704 of the APA. Therefore, the court has jurisdiction to hear Plaintiffs' claims under the NHPA. The court must now determine whether Plaintiffs' have stated a claim under the NHPA.

---

[5] Plaintiffs backed away from this challenge to the FIRM in their response in opposition to FEMA's motion. (Filing No. 13 ("Pl. Resp.") at 2 ("Plaintiffs do not necessarily challenge the scientific or technical information . . . .")).

**D.     NHPA**

The NHPA reflects Congress's longstanding interest in historic preservation. *Bus. & Residents All. of East Harlem v. Jackson*, 430 F.3d 584, 590 (2d Cir. 2005). To further its mission, the NHPA requires federal agencies to factor into their decision-making the potential adverse effects their undertakings would have on historic properties. Sections 106 and 110(f) of the NHPA, now codified at 54 U.S.C. §§ 306108 and 306107, respectively, set forth the obligations of agencies. Section 106 provides:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, *shall take into account the effect of the undertaking on any historic property*. The head of the Federal agency *shall afford the Council a reasonable opportunity to comment with regard to the undertaking*.

54 U.S.C. § 306108 (emphasis added). The ACHP defines an "undertaking," in relevant part, as "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a federal agency . . . ." 36 C.F.R. § 800.16(y). It defines "effect" as an "alteration to the characteristics of a historic property qualifying it for inclusion in or eligibility for the National Register." 36 C.F.R. § 800.16(i). The ACHP directs the agency to determine whether its action amounts to an undertaking "and, if so, whether it is a type of activity that has the potential to cause effects on historic properties." 36 C.F.R. § 800.3(a). If the agency finds in the negative, it has no further obligations. *Id.*

When an undertaking risks adversely affecting a National Historic Landmark, Section 110(f) imposes affirmative duties on the agency, providing:

> Prior to the approval of any Federal undertaking that may directly and adversely affect any National Historic Landmark, the head of the responsible Federal agency shall to the maximum extent possible undertake such planning and actions as may be necessary to minimize harm to the landmark. The head of the Federal agency shall afford the Council a reasonable opportunity to comment with regard to the undertaking.

54 U.S.C. § 306107.  The ACHP refers to Sections 106 and 110(f) and their accompanying consultation procedures, collectively, as the "Section 106 Process." *See* 36 C.F.R. §§ 800.3 to 800.13.  As Plaintiffs note, however, Section 110(f) imposes more stringent requirements when the undertaking has the potential to affect historic landmarks.  *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 242 (5th Cir. 2006).

Both provisions make clear that whether the production of a FIRM triggers duties under the Section 106 Process turns on whether the FIRM amounts to an undertaking as contemplated by the NHPA.  Plaintiffs inform the court of an absence of case law holding that FEMA's map-making activities qualify as undertakings under the NHPA.  Of course, if such precedent existed the parties likely would not find themselves in this litigation.  Plaintiffs simply invite the court to make the argument on their behalf.  The court declines to do so.

FEMA directs the court to *Chugach Alaska Corp. v. U.S. Forest Serv.*, an unreported, non-precedential opinion which surveys several cases that shed some light on what constitutes an "undertaking."  No. A99-414, 1999 WL 33946351 (D. Alaska Dec. 14, 1999).  In *Chugach Alaska Corp.*, a plaintiff organization with authority to receive fee title to existing historical sites within Alaska's Chugach region, sued the U.S. Forest

Service for failing to engage the Section 106 Process before approving the use of federal funds to purchase historically significant land. *Id.* at *1. Because the plaintiff failed to allege any specific harm to the character or use of the property that would result from the purchase, the court held that the "sole act of acquiring property is not an 'undertaking' for the purpose of NHPA." *Chugach Alaskan Corp.*, 1999 WL 33946351, at *5; *see Yerger v. Robertson*, 981 F.2d 460, 465 (9th Cir. 1992) (finding no "undertaking," observing that "mere exercise of ownership rights does not affect the historic character of the site, even when the assumption of control is clearly preparatory to action that will affect the site's historical aspects"); *but see Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 808 (9th Cir. 1999) (finding the agency's transfer of public land to private owner for purposes of logging constituted "undertaking").

Absent argument from Plaintiffs, the citations provided by FEMA satisfy the court that the mere act of producing an actuarial map, which increases the cost of flood insurance for owners of historical property, which might discourage owners from purchasing insurance and thereby improving their properties, does not constitute an "undertaking" as contemplated in the NHPA. Because the Section 106 Process only applies to federal undertakings, Plaintiffs have not stated a claim upon which relief can be granted.

12

## IV. Conclusion

For the foregoing reasons, FEMA's Motion to Dismiss (Filing No. 11) is **GRANTED**. Final judgment consistent with this Entry shall now issue.

**SO ORDERED** this 30th day of September 2015.

                                      RICHARD L. YOUNG, CHIEF JUDGE
                                      United States District Court
                                      Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.